'07 CIV 7763

438-07/MEU
FREEHILL HOGAN & MAHAR LLP
Attorneys for Plaintiff
GLORY WEALTH SHIPPING SERVICE LTD.
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Michael E. Unger (MU 0045)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
GLORY WEALTH SHIPPING SERVICE LTD.,

                Plaintiff,

   - against -

STX PANOCEAN CO. LTD.,

                Defendant.
---------------------------------------------------------------X

07 Civ. _____

VERIFIED COMPLAINT

RECEIVED AUG 3 1 2007 U.S.D.C. S.D.N.Y. CASHIERS

    Plaintiff, GLORY WEALTH SHIPPING SERVICE LTD. ("Glory Wealth" or "Plaintiff"), by and through its attorneys, FREEHILL, HOGAN & MAHAR, LLP, as and for its Verified Complaint against the Defendant, STX PANOCEAN CO. LTD., ("STX Panocean" or "Defendant") alleges, upon information and belief, as follows:

    1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333.

    2.    At all times material to this action, Plaintiff was, and still is, a foreign corporation, or other business entity organized and existing under foreign law with an address in Qingdao, China.

    3.    Upon information and belief, Defendant was, and still is, a foreign corporation, or other business entity organized and existing under the laws of South Korea.

4. At all material times, Plaintiff was the disponent Owner of the motor vessel "JIN ZHOU" (hereinafter the "Vessel").

5. By a charter party dated July 13, 2007, Plaintiff time-chartered the Vessel to Defendant for one trip via the Far East to the Mediterranean/Continent carrying steel and/or steel products.

6. Pursuant to the charter party, the Vessel proceeded to the nominated loading port, Xingang, and was delivered to Defendant on July 21, 2007.

7. The shippers at Xingang submitted a series of stowage plans. However, a dispute arose as to whether the instructions given by the shippers would endanger the Vessel.

8. As matters transpired, the Master refused to comply with the shippers' instructions.

9. On August 3, 2007, Defendant wrongfully attempted to terminate the charter party on the basis that Glory Wealth had failed and refused to perform Defendant's instructions and that this amounted to repudiation. Glory Wealth responded by denying repudiation and maintaining that STX Panocean was in repudiatory breach by purporting to terminate the charter.

10. The Vessel then discharged the cargo which was on board at the time of termination. In an effort to mitigate its damages, Glory Wealth entered into a substitute period charter to non-party, SK Shipping.

11. The Vessel's employment under the charter with STX Panocean would have been completed around September 16, 2007 (lasting approximately 50-60 days). Therefore the Vessel would have been open for charter in the Mediterranean or Continent around the conclusion of quarter three of 2007.

12. Redelivery in the Mediterranean or Continent, as was intended under the Glory Wealth-STX Panocean, would have positioned the Vessel for a profitable "front-haul" voyage to the Far East.

13. The daily hire rate under the Glory Wealth-STX Panocean charter party was $38,000.00 per day for the first 55 days, and $43,000.00 per day thereafter.

14. Fixtures out of the Mediterranean / Continent for comparable vessels on "front-haul" voyages to the Far East have been recently reported at $60,900.00 per day. Quarter four rates for charters from the Mediterranean or Continent to the Far East are generally higher than quarter three rates in the market sector.

15. The replacement fixture with SK Shipping is for three to five months plus or minus 15 days at $45,100.00 per day.

16. On that basis, the latest day for redelivery under the SK Shipping charter will be January 21, 2008.

17. As a result of Defendant's wrongful repudiation of the charter party contract Plaintiff has sustained damages in the principal amount of $1,786,500.00 calculated as follows:

> Period from delivery to SK Shipping (August 6, 2007) until estimated redelivery under the STX Panocean charter (September 16, 2007) = 31 days
>
> Difference between rate under SK Shipping charter and STX Panocean charter:  US$7,100 / day
>
> "Profit" for these 31 days:  US$220,100
>
> Period from redelivery under the Panocean charter (September 16, 2007) until redelivery by SK Shipping (January 21, 2008) = 127 days
>
> Difference between "front-haul" rate and SK rate = US$15,800 / day
>
> Loss for these 127 days =  US$2,006,600

        Overall loss (US$2,006,600 - US$220,100) = **US$1,786,500**

18. Despite due demand and in breach of the charter STX Panocean has failed and refused to pay the sums due to Glory Wealth.

19. Pursuant to the charter party between Glory Wealth and STX Panocean, all disputes arising thereunder are to be submitted to arbitration in London with English Law to apply.

20. Plaintiff commenced or shortly will commence arbitration proceedings against Defendant on its claims. Plaintiff reserves the right to arbitrate the merits of its disputes in England as per the agreement of the parties.

21. Plaintiff brings this action in order to obtain security for its claims in the London arbitration against Defendant and, to the extent necessary, to compel Defendant to arbitrate pursuant to the terms of the charter and if necessary to recognize and enforce the foreign arbitral awards, when rendered, as a judgment of this Court.

22. This action is further brought to obtain security for any additional sums to cover Plaintiff Glory Wealth's anticipated costs in the arbitration and interest, all of which are recoverable under English law and the rules of London Maritime Arbitration Association.

23. Upon information and belief, and after investigation, Defendant STX Panocean cannot be "found" within this district for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising of, inter alia, cash, funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant (hereinafter, "ASSETS"), including but not limited to "ASSETS" at, being transferred through, or being

transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein.

24. As nearly as presently can be computed, the total amount sought to be attached pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims by Glory Wealth against STX Panocean includes:

    a. Principal claim in the amount of $1,786,500;

    b. Interest of $316,952.15 on the above items, calculated at the rate of 8.25% per annum, compounded quarterly, for two years, the estimated time it will take to obtain a final arbitration award and to enter same as a judgment, which interest is recoverable under applicable English law and arbitral rules;

    c. Estimated recoverable attorneys' fees, costs and the costs of the arbitrations, which English solicitors estimate to be $350,000.00:

For a total sought to be attached in the sum of **$2,453,452.15**.

WHEREFORE, Plaintiff GLORY WEALTH prays:

    a. That process in due form of law according to the practice of this Court in admiralty and maritime jurisdiction issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged, failing which a default will be taken against it in the principal amount of $1,786,500 plus interest, costs and attorneys fees;

    b. That since Defendant cannot be found within this District pursuant to Supplemental Rule B, all tangible or intangible property of the Defendant, up to and including the sum of **$2,453,452.15**, be restrained and attached, including but not limited to any cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, debts, freights, sub-freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due or for the benefit of Defendant

(collectively "ASSETS"), including but not limited to such "ASSETS" as may be held, received or transferred in their own name or as may be held, received or transferred for its benefit at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein;

c. That this Court retain jurisdiction over this matter for purposes of any subsequent enforcement action as may be necessary;

d. That this Court award Plaintiff its attorney's fees and costs of this action; and

e. That this Court award such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
August 31, 2007

                        FREEHILL HOGAN & MAHAR, LLP
                        Attorneys for Plaintiff
                        GLORY WEALTH SHIPPING SERVICE LTD.

                        _____
                        Michael E. Unger (MU 0045)
                        80 Pine Street
                        New York, New York 10005
                        (212) 425-1900 – phone
                        (212) 425-1901 – fax

## ATTORNEY VERIFICATION

State of New York    )
                     ) ss.:
County of New York   )

MICHAEL E. UNGER, being duly sworn, deposes and says as follows:

1. I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications, information and documentation provided by our client.

3. The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
Michael E. Unger

Sworn to before me this
31st day of August, 2007

_____
Notary Public

MELISSA COLFORD
Commissioner of Deeds
City of New York-No. 5-1692
Certificate Filed in New York
Commission Expires 4/1/ 08